In the Matter of the Probate of the Will of JOHN DARROW.

(Argued March 21, 1884 ; decided April 15, 1884.)

THIS was an appeal from a judgment of General Term affirming a surrogate's decree admitting to probate the will of John Darrow.

The mem. of opinion is as follows:

"We are unable to find any question of law in this case. Our opinion upon the facts is not material. Very much has been forcibly said in favor of the theory of undue influence operating upon the mind of the testator, but upon conflicting facts and inferences the surrogate and General Term have found in favor of the will, and we cannot review such a determination. (*Matter of Ross*, 87 N. Y. 514 ; *Marx* v. *McGlynn*, 88 id. 357.) The substantial grounds of contest were that one of the principal beneficiaries in the will was the general counsel and attorney of the testator, who gave the instructions upon which the will was drawn by another but friendly attorney, and who had a previous opportunity to have exerted an influence upon the will, if so disposed. These facts were grounds of suspicion. Coupled with others, such as injustice to deserving relatives, whose disinheritance lacked rational

explanation, the presumption of fact might be very strong unless met and baffled by facts pointing in another direction. In this case the proofs indicating undue influence had their weak spots and broken links, while those indicating the contrary were quite numerous and strong.

The beneficiary did not draw the will and was not present when it was executed. The instructions he gave as coming from the testator were merely to prepare a codicil, and a new will was drawn by the advice and suggestion of Shepherd, and without the request or even the knowledge of Foley who gave the disobeyed direction. What the instructions given really were we do not know, but that is not the fault of the proponents. They tried to disclose them, but the contestants objected and prevented such disclosure. That fact justifies the inference that they related to a codicil which had no reference to Foley. There must have been a pre-existing will which Shepherd used as the basis of his draft modifying it only in accordance with the instructions. That will was not produced. The contestants did not call for it, and the proponents did not introduce it. The proof, therefore, fails to show that Shepherd's draft was in any manner affected or influenced by Foley so far as the devise to him was concerned.

The proofs again failed to demonstrate an unjust and unnatural treatment of relatives, such as could be explainable only by the presence of a foreign and disturbing influence. The testator, worth about $70,000, gave to his wife $8,000. At his death in October, 1882, he was about seventy years of age. His marriage to the present widow was in May, 1881, so that they had lived together only about a year and a half. Of all his relations in Saratoga one only, — a niece, — was present at the wedding. The widow was allowed to testify freely to her personal communications with the testator, and detailing remarks made near the close of his illness as indicating that he was flighty, gave some glimpses of his impression which may have been unfounded, but yet was in his mind that the widow might re-marry after his death. Under the circumstances the provision for the wife of eighteen months is not open to severe criticism nor to any serious extent. The

deceased had a brother, John, living in Saratoga. They had quarreled and disagreed. But to John's son the testator gave one-half of the residue of his estate. His sister Mary was dead. She had married and moved to the west, leaving children in Iowa and Dakota. To these nephews and nieces, whom perhaps he had never seen, and about whom he probably knew but little, he gave nothing. He had another sister, Mrs. Whitman, who had been dead for twenty years, but who left four children, two of whom were residents of Saratoga. To one of them — Mrs. Foster — whose residence was in Michigan, he gave $200, and to another, Mrs. Benedict, $250. He had a sister, Delia Benedict. To her he gave $800. To another sister, Mrs. Wayne, living in Detroit, he left nothing. He had another brother, Henry, living in San Francisco, to whom he gave nothing, but small legacies were scattered about among numerous other nephews and nieces. The case does not disclose the character of his relations with these relatives, but his will shows attention directed to them, and choice made among them. While there is neglect for some and but slender provision for most, there is no such gross and·unexplainable disregard of the ties of blood as to add important strength to the inference of a foreign and improper influence. Yet some force it certainly has, and that must not be overlooked in connection with other facts.

It is beyond reasonable question that the testator was of sound mind and memory when he executed the will and not a man to be readily influenced or controlled unless through his reason and sense of justice. He was seriously ill and doubted his own recovery, but nothing indicates that his habitual care and caution in the management of his affairs had deserted him in the least. He was taken sick on a Monday, and was then talking to his wife about business affairs. Even his friendship for Foley did not blind him to their neglect, for he spoke of money he had loaned him and that he wanted better security and asked to have him sent for. On that Monday night Foley came. The widow says she was present, but not all the time; that she left the room part of the time and 'then he was to see him Tuesday morning.' What passed at this interview

we do not know; and it does not appear that Foley ever saw him again.

"The will was executed on Wednesday. Shepherd came there about noon. The testator asked him if he had the papers. That indicates that the deceased knew who had been intrusted with the duty of their preparation. Shepherd explained that Foley had instructed him to draw a codicil, but he, Shepherd, thought it better to draw the whole will over, to which the testator assented. Shepherd says the deceased put on his glasses and read the will through, commenting when he reached them upon some of the charitable bequests. Soon after, the other witness came in, and the testator raised himself up in bed and signed the will. Remembering that even the widow says that she ' couldn't recall any thing that he was out of his head' until Friday and Saturday, we have here a sensible and careful man, in full possession of his faculties, who, having directed a codicil, is presented with a will wholly re-drawn, who for that reason would naturally scan it with care, who did take it and read, and then with full knowledge and appreciation of his act formally executed it. Some doubt is sought to be thrown upon the assertion that testator read the will through by the estimate of the widow that its perusal would have taken him half an hour, while he was busy about it but fifteen minutes. Such estimates are of very little value and not enough to disturb the statement of Shepherd.

"These are the substantial facts, and they present a question of fact upon which different minds might easily disagree. They lead to contradictory inferences and point to hostile conclusions. Upon them the surrogate decided in favor of the will. The General Term, which might have sent the case to a jury if doubtful about it, has affirmed the decision. The question is wholly one of fact, and beyond our reach. While we do not pretend to conceal a disposition to scan carefully bequests like this, they may, nevertheless, be perfectly honest and fair. We are bound by the determination that this one is of that character."

*Charles S. Lester* for appellant.

*L. B. Pike* for respondent.

FINCH, J., reads for affirmance.
All concur, except RAPALLO, J., absent.
Judgment affirmed.